IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

VÍCTOR FERRER, et al.,

       Plaintiffs

          v.

INTERNATIONAL LONGSHOREMEN'S
ASSOCIATION (ILA) AFL-CIO, et
al.,

       Defendants

CIVIL NO. 08-1505 (JP)

## OPINION AND ORDER

Before the Court are a motion to dismiss (No. 35) filed by
Defendant International Longshoremen's Association, AFL-CIO ("ILA"),
and an opposition thereto (No. 40) filed by Plaintiffs Víctor Ferrer
("Ferrer"), Sonia Santiago, and the conjugal partnership between them
(collectively, "Plaintiffs").  Also before the Court is Defendant
ILA's reply brief (No. 43).  Plaintiff Ferrer filed the instant
complaint against Defendants ILA, Union de Trabajadores de Muelles
y Ramas Anexas de San Juan - Local 1740 ("Local 1740"), and Julián
Cepero ("Cepero") for violations of his rights under the Labor
Management Reporting and Disclosure Act, 29 U.S.C. § 411 ("LMRDA");
the Taft-Hartley Act, 29 U.S.C. § 157, *et seq.*; the Racketeer
Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1962,
*et seq.*; and Puerto Rico law.

CIVIL NO. 08-1505 (JP)            -2-

Defendant ILA now moves to dismiss the complaint, arguing that Plaintiffs have failed to allege an LMRDA or RICO claim upon which relief can be granted, and that the Court lacks subject matter jurisdiction over Plaintiffs' Taft-Hartley Act and state law claims. For the reasons stated herein, Defendant ILA's motion (**No. 35**) is hereby **GRANTED IN PART AND DENIED IN PART.**

I.    FACTUAL ALLEGATIONS

At all times relevant to the complaint, Plaintiff Ferrer was a union leader with the ILA, holding the position of the Financial Secretary for the Local 1740. Jorge Aponte-Figueroa ("Aponte"), the Local 1740 President, was convicted of money laundering charges on April 2, 2007. As a result of said conviction, Aponte could no longer occupy the Presidency. Defendant Cepero, who at the time was the Vice President of the Local 1740, allegedly named himself Interim President as a result of Aponte's incarceration.

Immediately upon becoming Interim President, Plaintiff Ferrer requested for Cepero to invoke a ratification assembly of all members of the Local 1740. Plaintiff Ferrer alleges that he and other members of the Local 1740 were suspicious that Cepero's occupation of the presidency was to destroy evidence that may link Cepero and the ILA to the criminal actions for which Aponte was convicted. Cepero dismissed the request, and a ratification assembly was not held.

CIVIL NO. 08-1505 (JP)              -3-

On June 6, 2007, Cepero sent Ferrer a letter admonishing Ferrer's conduct as a member of the Local 1740. Cepero allegedly engaged in a pattern of false accusations and harassing observations toward Ferrer, all motivated by Ferrer's challenge to Cepero's self-proclamation as President. Cepero informed Plaintiff Ferrer that he would seize control of all financial documentation and information regarding the operations of the Local 1740. Plaintiff Ferrer alleges that the true purpose of this effort was to erase any link between the ILA, Cepero, and the criminal acts for which Aponte was convicted.

Relations between Ferrer and Cepero continued to deteriorate. In September 2007, Cepero allegedly insinuated threats at Ferrer and intensified his harassment regarding Ferrer's performance as Finance Secretary. On September 1, 2007, Cepero filed charges against Plaintiff Ferrer with the ILA for shoddy financial practices, without first notifying Plaintiff or affording him a chance to explain his position as to the charges prior to filing.

On September 10, 2007, the ILA appointed a committee to consider the charges against Plaintiff Ferrer, of which Plaintiff was notified by mail. Plaintiff alleges that the purpose of the filing of the charges was to interrupt Plaintiff's rallying of the members of the Local 1740 to terminate Cepero's self-proclaimed presidency. On September 25 and 26, 2007, the ILA conducted hearings. Plaintiff Ferrer was present at said hearings and was represented by counsel.

CIVIL NO. 08-1505 (JP)          -4-

On October 12, 2007, some members of the committee located in Puerto Rico, New York, and Florida exchanged the committee report on the charges brought against Plaintiff Ferrer.  These exchanges included a discussion of the charges, and the evidence that would be used to support the report.

At some point thereafter, Plaintiff Ferrer was terminated from his position as Financial Secretary of the Local 1740 and was allegedly denied further participation in union matters.  Plaintiff exhausted the appeals process provided by the ILA without successful results.

## II.  LEGAL STANDARD FOR A MOTION TO DISMISS

According to the Supreme Court, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1969 (2007).  As such, in order to survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face, not merely conceivable. Id. at 1974. The First Circuit has interpreted Twombly as sounding the death knell for the oft-quoted language of Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 94-95 (1st Cir. 2007), quoting Twombly, 127 S. Ct.

CIVIL NO. 08-1505 (JP)            -5-

at 1969.  Still, a court must "treat all allegations in the Complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff."  <u>Rumford Pharmacy, Inc. v. City of East Providence</u>, 970 F.2d 996, 997 (1st Cir. 1992).

## III. ANALYSIS

Defendant ILA moves to dismiss Plaintiffs' complaint on the following grounds: (1) Plaintiffs have failed to allege an LMRDA § 411 claim; (2) the Court lacks jurisdiction to hear Plaintiffs' claims brought under the Taft-Hartley Act; (3) Plaintiffs have failed to plead a RICO claim; and (4) Plaintiffs have failed to state valid state law claims.  The Court will now consider Defendant ILA's arguments.

### A. <u>Plaintiffs' LMRDA Claims</u>

Defendant ILA first argues that Plaintiff has failed to state a claim pursuant to Section 101 of the LMRDA, 29 U.S.C. § 411, because this statute does not protect a union officer's right to remain in office.

Section 101 of the LMRDA is essentially a union members' bill of rights.  Specifically, it protects union members' rights to voting, speech, and assembly.  29 U.S.C. § 411.  This Court has held that the aforesaid statute "safeguards the membership rights of union members, but not the right of members to hold office."  <u>Ríos v. Oil, Chemical & Atomic Workers International Union</u>, 331 F. Supp. 511, 513 (D.P.R. 1970).  The United States Supreme Court considered this

CIVIL NO. 08-1505 (JP)          -6-

question in Finnegan v. Leu, 456 U.S. 431, 437 (1982), and stated that the Congressional intent behind the LMRDA is to protect "rank-and-file union members – not union officers or employees, as such."
The Supreme Court also held that "removal from appointive union employment is not within the scope of those union sanctions explicitly prohibited" by the relevant statutory provisions. Id. at 439. Further, the Supreme Court found that "discharge from union employment does not impinge upon the incidents of union membership, and affects union members only to the extent that they happen also to be union employees." Id. at 438 (citation omitted).

Plaintiff Ferrer specifically alleges in his complaint that Defendants violated the LMRDA by illegally separating Ferrer from his position in retaliation for Ferrer's exercise of meeting with other union members to debate important issues regarding the management of the Local 1740's affairs. Compl. ¶¶ 20-21. Further, Plaintiff alleges he was separated from his position in order to curtail his run for the presidency of the Local 1740, and also to hide fraudulent activities previously undertaken by the Local 1740 in connection with Defendant Cepero. Compl. ¶¶ 22-23. In his opposition to Defendant's motion to dismiss, Plaintiff argues that his rights as a union member - namely, to run for office and to intervene in the union's administrative affairs - were impeded by Defendants' allegedly unlawful removal of Plaintiff from office.

CIVIL NO. 08-1505 (JP)          -7-

It is clear that Plaintiff Ferrer does not have a cause of action under 29 U.S.C. § 411 for his removal from union office. However, Plaintiff Ferrer has pled that his removal was motivated by Defendants' intent to impair his other membership rights, including freedom of assembly and freedom of speech, in relation to Plaintiff Ferrer's campaign to muster support to oust Cepero from the presidency.  This Court has suggested that a plaintiff may have a cause of action for removal from his union office when said removal was the result of exercising his union rights.  Ríos, 331 F. Supp. at 513 (citing DeCampli v. Greeley, 293 F. Supp. 746 (D.N.J. 1968); Grand Lodge of International Association of Machinists v. King, 335 F.2d 340 (9th Cir. 1964)).  Accordingly, at this early stage of the proceedings, the Court finds that  Plaintiffs have met their burden of pleading a cause of action under 29 U.S.C. § 411.

**B.   Plaintiff's Taft-Hartley Act Claims**

Defendant ILA moves to dismiss Plaintiffs' claims brought pursuant to the Taft-Hartley Act, 29 U.S.C. §§ 157, 158, 185, and 187.   Plaintiffs did not specifically oppose Defendant's arguments for dismissal as to these claims in their opposition brief.

**1.   *Plaintiffs' claims under 29 U.S.C. §§ 157-158***

As for Plaintiffs' first two claims, 29 U.S.C. § 157 protects employees in their right to organize, form, join or assist a labor organization and to participate in collective bargaining.  29 U.S.C. § 158 proscribes unfair labor practices by an employer, including,

CIVIL NO. 08-1505 (JP)          -8-

*inter alia*, discouraging membership in a labor organization. Defendant ILA argues that the Court lacks jurisdiction over the first two claims, as the National Labor Relations Board ("NLRB") has jurisdiction over unfair labor practices.   The National Labor Relations Act, 29 U.S.C. §§ 151-161 ("NLRA"), "is a code passed by Congress to regulate labor relations in activities affecting interstate and foreign commerce." Tamburello v. Comm-Tract Corp., 67 F.3d 973, 976 (1st Cir. 1995) (quoting Nash v. Florida Indus. Comm'n, 389 U.S. 235, 238 (1967)).   The NLRA vests the NLRB with primary jurisdiction over unfair labor practices.   Id. (citing 29 U.S.C. § 158).   This reflects Congressional desire to form a "uniform, nationwide body of labor law interpreted by a centralized expert agency." Id.   Applying these principles, the United States Supreme Court has clearly held that claims under § 7 and § 8 of the NRLA are subject to the exclusive jurisdiction of the NLRB.   San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236, 247 (1959).   The United States Court of Appeals for the First Circuit has interpreted this to mean that generally, neither state nor federal courts have jurisdiction over actions directly involving activity which is subject to § 7 or § 8 of the NLRA. Tamburello, 67 F.3d at 976.   The First Circuit has specifically held that claims arising out of unfair labor practices and brought under 29 U.S.C. §§ 157-158 fall within the ambit of the NLRA, and therefore a district court lacks jurisdiction over said claims. Id. at 977.

CIVIL NO. 08-1505 (JP)          -9-

The Court agrees with Defendant that the alleged unlawful behavior described by Plaintiffs' 29 U.S.C. §§ 157-158 claims falls within the scope of the NLRA, and therefore the Court does not have jurisdiction over said claims.

### 2.   *Plaintiffs' Claims under 29 U.S.C. §§ 185, 187*

Defendant argues that Plaintiff's remaining two claims under the Taft-Hartley Act, 29 U.S.C. §§ 185 and 187, are baseless.  29 U.S.C. § 185 provides federal jurisdiction for labor unions to sue for violations of contracts between an employer and a labor union.  It also provides federal jurisdiction for labor unions to sue each other.  There are no allegations in Plaintiff's complaint that he is suing over a breach of contract; moreover, as Plaintiff himself is not a labor union, he lacks standing to sue under this provision.

29 U.S.C. § 187 provides a right to sue for any employer who is "injured in his business or property" by a union demonstration that is defined as an unfair labor practice under 29 U.S.C. § 158(b)(4).  Plaintiff Ferrer does not allege in his complaint that he was injured in his business or property by an unlawful strike or demonstration.  As such, this provision is inapplicable to Plaintiffs' claims.

The Court grants Defendant ILA's motion to dismiss Plaintiff's Taft-Hartley Act claims, and will enter a separate judgment dismissing said claims with prejudice.[1]

---

1.     Although Defendants Local 1740 and Cepero did not join Defendant ILA's motion to dismiss, the Court finds that this holding applies to Plaintiffs' claims against these Defendants as well.  As such, Plaintiffs' Taft-Hartley Act claims

CIVIL NO. 08-1505 (JP)          -10-

###     C.   **Plaintiffs' RICO Claims**

Plaintiffs allege RICO violations pursuant to 18 U.S.C. § 1962(a)(c) and (d).  RICO § 1962(a) generally provides that it is unlawful for any person who has received income from a pattern of racketeering activity to use such income for the operation of an enterprise affecting interstate or foreign commerce.  § 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . ."  18 U.S.C. § 1962(c). Plaintiffs also allege that Defendants conspired to violate RICO in violation of § 1962(d), which states the following: "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

Defendant ILA moves to dismiss Plaintiffs' RICO claims on three grounds: (1) Plaintiffs have failed to plead the existence of an enterprise, (2) Plaintiffs have failed to plead the necessary predicate acts, and (3) Plaintiffs have failed to plead a pattern of racketeering activity.   The Court will now consider these arguments in turn.

---

will be dismissed against all Defendants.

CIVIL NO. 08-1505 (JP)          -11-

### 1.   *Enterprise*

     To prevail on his RICO claims, Plaintiff Ferrer must first demonstrate the existence of an "enterprise," which is defined as "a group of persons associated together for a common purpose of engaging in a criminal course of conduct." <u>United States v. Connolly</u>, 341 F.3d 16, 25 (1st Cir. 2003)(citations omitted).  Although the enterprise need not be formal or have an "ascertainable structure," it must have a goal beyond the isolated benefit that comes with the commission of each criminal act, and there must be an "ongoing organization" with "associates functioning as a continuous unit." <u>Id.</u> (quoting <u>United States v. Patrick</u>, 248 F.3d 11, 19 (1st Cir. 2001)).  The United States Supreme Court has held that the enterprise is not the same as the pattern of racketeering activity: rather, the enterprise is "an entity separate and apart for the pattern of activity in which it engages" and remains a separate element which must be proved by a plaintiff.  <u>United States v. Turkette</u>, 452 U.S. 576, 583 (1981).

     Plaintiff Ferrer alleges that Defendants, including all members of the Local 1740 and the ILA who serve administrative and labor-related functions, are members of the enterprise.  Plaintiff further alleges that the commonality of purpose of the enterprise is engaging in the unlawful conduct of impeding Plaintiff Ferrer's bid for the  presidency of the Local 1740.  At this early stage of the litigation, the Court finds that Plaintiffs have met their burden of

CIVIL NO. 08-1505 (JP)          -12-

pleading that an ongoing organization exists with its members sharing a common unlawful goal and working together in furtherance of said goal.

### 2. *Predicate Acts*

Plaintiffs' complaint must next allege that Defendants engaged in the predicate acts necessary to constitute a pattern of racketeering activity. <u>See</u> <u>Uviles v. RYS Int'l Corp.</u>, 443 F. Supp. 2d 233, 237 (D.P.R. 2006). Plaintiffs claim that mail fraud, wire fraud, and extortion are the predicate acts that serve as the basis for Plaintiffs' RICO claims.

### a. <u>Mail and Wire Fraud</u>

The First Circuit has held that in civil RICO claims alleging mail or wire fraud, Rule 9(b) of the Federal Rules of Civil Procedure applies and, thus, a plaintiff must plead those acts with specificity. <u>See</u> <u>Hernández v. Ballesteros</u>, 333 F. Supp. 2d 6, 11 (D.P.R. 2004) (citing <u>New England Data Servs. Inc. v. Becher</u>, 829 F.2d 286, 290-291 (1st Cir. 1987)). To plead with specificity under RICO, the plaintiff must "state the time, place and content of the alleged mail and wire communication perpetrating that fraud." <u>New England Data Servs. Inc.</u>, 829 F.2d at 291.

A plaintiff's failure to plead with specificity in a RICO action may merit dismissal. <u>Cordero-Hernández v. Hernández-Ballesteros</u>, 449 F.3d 240, 244 (1st Cir. 2006). However, because the facts necessary for a plaintiff to plead his claim with specificity are

CIVIL NO. 08-1505 (JP)          -13-

often solely in the possession of the defendant, a court may permit limited discovery in order to give plaintiff an opportunity to develop the claim and amend the complaint. Id. (citing New England Data Servs. Inc., 829 F.2d at 290). However, the granting of further discovery and subsequent amendment is not automatic. Id. (citation omitted). The Court must consider whether the specific allegations of the plaintiff make it likely that the defendant used interstate mail or wire facilities and whether the specific information as to said use is likely in the exclusive control of the defendant. New England Data Servs. Inc., 829 F.2d at 290.

In their complaint, Plaintiffs allege that in November 2006, and again in the period between June and August 2007, Defendants communicated through mail and telephone with the purpose of serving letters upon Plaintiff Ferrer. Compl. ¶ 33. Said letters allegedly contain false charges against Ferrer and were used to disqualify Ferrer from occupying the Financial Secretary position and from being a member of the Local 1740. Id. On September 10, 2007, Plaintiff received a letter from Defendant ILA containing false statements regarding Ferrer's performance as Financial Secretary. Compl. ¶ 35. Plaintiff Ferrer received letters from Defendant Cepero on September 17, 18, 20, and 27, 2007, aimed at discouraging Plaintiff from continuing certain union membership activities and performing his duties as Financial Secretary. Compl. ¶ 36. Plaintiff alleges that on October 12, 2007, several members of an ILA committee

CIVIL NO. 08-1505 (JP)          -14-

exchanged false information about Plaintiff through mail and by use of facsimile, as well information regarding the dismissal of Plaintiff Ferrer from his position.  Compl. ¶ 37.

Defendant ILA argues that Plaintiffs fail to meet the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure because they fail to plead the mail and wire fraud allegations with specificity.  The Court disagrees.  Taking the facts in the light most favorable to Plaintiffs, the Court finds that the complaint meets the threshold pleading requirements for the predicate acts of mail fraud and wire fraud.

### b.  **Extortion**

Plaintiff also alleges extortion under the Hobbs Act, 18 U.S.C.A. § 1951(a), as a third predicate act.  The Hobbs Act punishes any person who "obstructs, delays or affects commerce . . . by robbery or extortion or attempts or conspires to do so." 18 U.S.C.A. § 1951(a).  The Hobbs Act defines extortion as "the obtaining of property from another, with his consent induced by wrongful use of actual or threatened force, violence, or fear, or under color of official right."  18 U.S.C.A. § 1951(b)(2).  To satisfy the "obtaining of property" requirements of a predicate act under RICO, Plaintiff Ferrer must allege a Hobbs Act violation that actually caused the loss of his job or union membership, as opposed to the mere threat of a loss.  See Camelio v. American Fed'n, 137 F.3d 666, 670 (1st Cir. 1998).  The United States Supreme Court

CIVIL NO. 08-1505 (JP)          -15-

has held that "extortion as defined in the statute in no way depends upon having a direct benefit conferred on the person who obtains the property." <u>United States v. Green</u>, 350 U.S. 415, 420 (1956).

In the complaint, Plaintiffs allege that Defendants attempted to stop Ferrer's campaign to reveal Cepero's unlawful deeds. Specifically, the decision issued by Defendant ILA terminated Plaintiff Ferrer's union position and prevented him from running for election for the presidency of the Local 1740.  Although Plaintiffs' allegations are sparse regarding the "threatened force, violence, or fear, or under color of official right" element of their Hobbs Act claim, the Court finds that Plaintiffs have nonetheless met their burden of pleading extortion at this juncture, given that the Court must consider all facts in the light most favorable to Plaintiffs.

### 3.   *Pattern of Racketeering Activity*

Finally, Defendant ILA argues that Plaintiffs have failed to allege a pattern of racketeering activity.  To prevail on a RICO claim, a plaintiff must allege that the defendants engaged in a pattern of racketeering activity."  18 U.S.C. § 1962; see <u>Financial Advisors & Consultants v. Cooperativa de Seguros de Vida (COSVI)</u>, 106 F. Supp. 2d 244, 256 (D.P.R. 2000) (Pieras, J.).  The statute defines a "pattern" as at least two acts of racketeering, and specifies  what acts may serve as predicates for such a claim.  <u>See</u> 19 U.S.C. §§ 1961(1) and (5).  As stated above, the Court has found that Plaintiff has met his burden of pleading the required predicate

CIVIL NO. 08-1505 (JP)          -16-

acts. However, a plaintiff must further plead that the two or more predicate acts "are related and pose at least a threat of continued criminal activity." <u>Financial Advisors & Consultants</u>, 106 F. Supp. 2d at 257 (quotations omitted).

Defendant ILA focuses its argument on the continuity requirement, which can be satisfied by one of two methods. <u>Id.</u> First, a party may demonstrate continuity over a closed period of time by proving a series of related predicate acts extending over a substantial period of time, which is known as "closed-ended continuity." <u>Id.</u> Second, the continuity requirement can be satisfied when the predicate acts take place within a more narrow time-frame, if the racketeering acts include a specific threat of repetition extending into the future, or are part of a defendant's regular way of conducting business. <u>Id.</u> This is known as the open-ended approach. Defendant argues that Plaintiffs' allegations do not demonstrate either a pattern of closed- or open-ended continuity.

Plaintiffs argue that their complaint satisfies the open-ended theory of continuity, since the allegedly illegal conduct may be repeated in the future when Ferrer attempts to run for the presidency after his ILA-imposed restrictions have concluded. Although Plaintiffs raise this argument in their opposition brief, there is no allegation or reference in the complaint that would support a period of open-ended continuity. Plaintiff Ferrer phrases his RICO

CIVIL NO. 08-1505 (JP)          -17-

complaint in the past tense, and does not offer any suggestion that said conduct will continue.  The Court therefore agrees with Defendant ILA that Plaintiff has failed to allege an open-ended pattern of continuing racketeering activity.

However, the Court finds that Plaintiff has met its burden of pleading closed-ended continuity at this stage of the litigation. Plaintiffs allege that the pattern of racketeering began in November 2006, when Defendant Cepero communicated with members of the ILA and the Local 1740 regarding false charges of misconduct against Plaintiff Ferrer.  Compl. ¶ 33.  Plaintiffs argue that Defendant Cepero then entered into an agreement with the other Defendants to file charges against Ferrer, and for Ferrer to be subsequently terminated from his union position, thereby establishing a closed-ended pattern of racketeering activity that followed from said agreement.  Ferrer was terminated from his position sometime shortly after October 12, 2007.  This suggests a period of approximately eleven months during which Defendants allegedly engaged in a pattern of racketeering activity.

Although there is no bright line rule to establish the amount of time necessary to show closed-ended continuity, the First Circuit has held that a period of racketeering activity of less than two years does not satisfy the closed-ended continuity requirements. Efron v. Embassy Suites (P.R.), Inc., 223 F.3d 12, 20 (1st Cir. 2000).  The United States Supreme Court has stated that

CIVIL NO. 08-1505 (JP)            -18-

"[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the continuity] requirement." H. J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 242 (1989). Although the relevant precedent suggests that a period of eleven months may be too short to establish a pattern of closed-ended continuity, the Court declines to dismiss Plaintiff's RICO claims on this element alone, given that further discovery may reveal a more lengthy period of racketeering activity. This is especially likely in light of Plaintiffs' claims regarding the potential tie between the illegal acts of Aponte and the behavior of his self-appointed successor, Cepero. Given the gravity of the claims made by Plaintiffs and the overall pattern of activity described, the Court finds that Plaintiff Ferrer has met his initial burden of pleading closed-ended continuity.

### D.   Plaintiffs' State Law Claims

Defendant moves to dismiss Plaintiffs' state law claims brought pursuant to Puerto Rico Law 100, P.R. Laws Ann. tit. 29, §§ 145, 147; and Article II, Sections 16-18 of the Constitution of the Commonwealth of Puerto Rico.[2] Plaintiffs do not address Defendant ILA's argument regarding the state law claims in his opposition brief.

---

2.    Defendant ILA does not specifically address Plaintiffs' claims brought pursuant to Articles 1802 and 1803 of the Puerto Rico Civil Code, P.R. Laws Ann. tit. 31, § 5141.

CIVIL NO. 08-1505 (JP)          -19-

P.R. Laws Ann. tit. 29, § 145 provides a criminal penalty for employers who violate P.R. Laws Ann. tit. 29, § 144, which provides, *inter alia*, that it is unlawful for an employer to make cash advances to his workmen and that businesses employing more than ten employees are prohibited from selling tools and merchandise to their employees. The allegations in Plaintiff's complaint do not state a claim under this provision, and there is no private cause of action available under said provision.  As such, Plaintiffs' claims under P.R. Laws Ann. tit. 29, § 145 will be dismissed with prejudice.

P.R. Laws Ann. tit. 29, § 147 prohibits discrimination by a labor union based on age, race, color, social or national origin, social condition, political affiliation, political or religious ideology.  Specifically, this provision prevents labor organizations from limiting, dividing or classifying their members based on the aforesaid characteristics.  Although Plaintiff Ferrer's complaint derives from a situation involving internal union politics, he has not specifically alleged that his political ideology or affiliation motivated Defendants' allegedly illegal behavior.  Even taking the facts in the light most favorable to Plaintiff Ferrer, he has not stated a claim upon which relief can be granted under this provision.

Article II, Sections 16-18, of the Constitution of the Commonwealth of Puerto Rico protect the rights of workers to choose their occupations freely, to have equal pay for equal work, to earn a minimum salary, to be protected from health risks, to organize, to

CIVIL NO. 08-1505 (JP)          -20-

bargain collectively, to strike, and to picket.  Defendant ILA claims
that these provisions are afforded to an employee vis-a-vis his
employer in the context of the employment relationship, and as
Defendant ILA is not Plaintiff's employer, none of these provisions
apply to Plaintiff's claims against it.  However, Defendant cites no
precedent in support of this point, and the Court is not aware of any
established precedent that these provisions of the commonwealth
constitution apply only to employers.  As such, the Court will allow
Plaintiffs' state constitutional claims to proceed against all
Defendants at this stage of the litigation.

**IV.   CONCLUSION**

     Defendant ILA's motion to dismiss is granted in part and denied
in part.  The Court will enter a separate judgment dismissing
Plaintiffs' Taft-Hartley Act claims against all Defendants, as well
as Plaintiffs' state law claims brought pursuant to P.R. Laws Ann.
tit. 29, §§ 145, 147.  Plaintiffs' LMRDA claims and RICO claims will
remain pending before the Court, as will Plaintiffs' claims brought
pursuant to Articles 1802 and 1803 of the Puerto Rico Civil Code and
the Constitution of the Commonwealth of Puerto Rico.

     **IT IS SO ORDERED.**

     In San Juan, Puerto Rico, this 7th day of May, 2009.


                              s/Jaime Pieras, Jr.
                              JAIME PIERAS, JR.
                         U.S. SENIOR DISTRICT JUDGE