IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| VÍCTOR FERRER, et al.,<br><br>           Plaintiffs<br><br>                v.<br><br>INTERNATIONAL LONGSHOREMEN'S ASSOCIATION (ILA) AFL-CIO, et al.,<br><br>           Defendants | CIVIL NO. 08-1505 (JP) |

## <u>OPINION AND ORDER</u>

Before the Court is Defendants International Longshoremen's Association AFL-CIO ("ILA"), Local 1740, and Julián Cepero's ("Cepero") motion for summary judgment (**No. 79**), and Plaintiffs Víctor Ferrer ("Ferrer") and Sonia Santiago's opposition thereto (No. 90). Plaintiffs brought the instant action pursuant to the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, *et seq.* Plaintiffs also bring claims arising under Puerto Rico law, specifically Article 1802 of Puerto Rico's Civil Code, P.R. Laws Ann. tit. 31, § 5141; and Article II of the Constitution of the Commonwealth of Puerto Rico. For the reasons stated herein, Defendants' motion for summary judgment is hereby **GRANTED**.

CIVIL NO. 08-1505 (JP)          -2-

I.   **MATERIAL FACTS NOT IN GENUINE ISSUE OR DISPUTE**

The following material facts were deemed uncontested by all parties hereto at the May 20, 2009, Initial Scheduling Conference (No. 66).

1.   Plaintiff Ferrer was eligible, according to Local 1740 bylaws, to run for office, including the presidency of Local 1740, prior to October 2007.

2.   A Committee by the Atlantic Coast District ("ACD") issued the following recommendations which were approved by the ACD and affirmed by the ILA on appeal:

   a.   That Brother Ferrer be removed from the position of Financial Secretary of Local 1740.

   b.   That Brother Ferrer is barred from running for any ILA office for a period of one (1) year from the date of the issuance of this Report.

   c.   That Brother Ferrer provide any and all financial books and records of Local 1740 kept on paper, electronically or otherwise including any computer passwords to Interim President Cepero immediately upon receipt of this Report.

   d.   That Brother Ferrer restrain himself from any obstruction or interference with the administrative business of Local 1740.

CIVIL NO. 08-1505 (JP)          -3-

> e.    That  Interim  President  Cepero  is  directed  to
>        immediately  hire  a  qualified  Certified  Public
>        Accountant  to  conduct  an  audit  of  Local  1740's
>        finances  subject  to  the  provisions  contained  in
>        Article XIII, Section 9 of the ILA Constitution and
>        Rules of Order.
>
> f.    That Local 1740 submit its by-laws for review by the
>        ILA to ensure compliance with the ILA Constitution
>        and Federal law.

3.    The ILA is governed by a Constitution that establishes the
      relationship between the ILA and its subordinate bodies,
      including the ACD, local unions, and members.

4.    The ACD is an intermediate body of the ILA having
      jurisdiction over locals operating within Puerto Rico.
      The ACD Constitution governs its relationship between the
      ILA and its constituent locals and their members.

5.    By the terms of the ILA Constitution, local unions are
      self governing.  They adopt their own by-laws; the locals'
      members elect their own officers, Executive Boards and
      committees that they deem proper for the conduct of the
      local's affairs; the salaries of local officers are fixed
      by the local's membership.  Local 1740 is a separate and
      distinct entity from the ILA.

CIVIL NO. 08-1505 (JP)          -4-

6.    Defendant Local 1740 is an affiliated local of the ILA.
      Local 1740 represents longshoremen in the port of San
      Juan, Puerto Rico.   Plaintiff Ferrer was the elected
      Financial Secretary of that local until his removal from
      office after a union disciplinary hearing.   Defendant
      Cepero was the elected Vice President and interim
      President of Local 1740 at all times relevant hereto.

7.    The ILA Constitution contains a Code of Ethics that is
      binding upon all ILA and ILA local officers.
      Article VIII, Section 2 of the ILA Code of Ethics states:
      "Upon receipt of notice that any officer, representative,
      employee or labor trustee of the I.L.A., District or Local
      union has been criminally charged with any felony
      violation of a federal or state law, or for any violation
      of a federal or state law relating to the conduct of the
      affairs of a labor organization or employee benefit plan,
      the I.L.A. President shall place the accused individual
      on a temporary leave of absence with pay.   The Ethical
      Practices Counsel shall then promptly institute an
      investigation regarding the allegations, and within sixty
      (60) days provide a written report of his investigation."

8.    The ILA Code of Ethics establishes the position of Ethical
      Practices Counsel and the Honorable Milton Mollen has been

CIVIL NO. 08-1505 (JP)                -5-

continuously retained as the Ethical Practices Counsel to the ILA since 2004.

9.   In July 2005 Jorge Aponte ("Aponte") held office as President of ILA Local 1740.  At that time, Cepero was the Vice-President of Local 1740 and Ferrer was the local's Financial Secretary.   On July 19, 2005, Aponte was indicted by the United States Attorney's Office for the District of Puerto Rico on charges of: (a) conspiracy to embezzle almost $2 million from Local 1740; (b) conspiring to embezzle over $8 million from the Plan de Bienestar, a benefit plan for ILA members in Puerto Rico; (c) money laundering; and (d) making false entries on Local 1740's LM-2 and LM-3 forms.

10.  By letter dated July 22, 2005, ILA President Bowers informed Aponte that in accordance with the ILA Code of Ethics, Aponte was placed on a temporary leave of absence from all ILA offices, including his position as President of Local 1740.

11.  Upon investigation by the Ethical Practices Counsel, Aponte's suspension from union office was ordered to continue without pay.

12.  Article VII, Section 2 of Local 1740's by-laws provides that: "The Vice-President shall replace the President in cases of extended illness, death, or in cases indicated by

CIVIL NO. 08-1505 (JP)          -6-

> the rule of debate, or in cases of abandonment, treason, on-the-spot resignation, or in any other necessary or urgent cases."

13. Pursuant to Article VII, Section 2 of Local 1740's by-laws, Cepero assumed the presidency of Local 1740 on an interim basis.

14. Cepero testified as a witness during the trial of Aponte and was subject to cross-examination. Cepero was not named as a conspirator in the trial.

15. On April 2, 2007, Aponte was convicted by a jury on 12 felony counts and, as a result, is barred from holding union office pursuant to 29 U.S.C. § 504 for a period of thirteen years.

16. Article VII, Section 2 of the Local 1740 by-laws further states: "In any event in which the Vice-President replaces the President due to death, resignation, or permanent and total disability, his position shall be subject to ratification or rejection by all of the members at the next scheduled General Assembly."

17. Article VIII, Section 1 of Local 1740's by-laws states: "Regular Meetings: members shall meet at a Regular Meeting four times a year: during the first two weeks of April, the first two weeks of July, the first two weeks of October, and the first two weeks of January of each coming

CIVIL NO. 08-1505 (JP)          -7-

     year.  The regular meetings shall be held at the place, date and time Chairman orders, within the time stipulated by the constitution."

18.  A ratification assembly was convened on October 17, 2007 for the purposes of affirming Cepero's occupation of the presidency.  The ratification, conducted by secret-ballot, was observed by representatives from the Puerto Rico Department of Labor.

19.  A majority of those members of Local 1740 voting at the ratification assembly voted in favor of ratifying Cepero's occupation of the office of president.

20.  Richard P. Hughes, Jr. was elected to succeed John Bowers as President of the ILA during the National Convention in July 2007.

21.  Ferrer did not file charges with the ILA regarding either Cepero's occupation of the Presidency of Local 1740 or the ratification assembly.

22.  Article XVIII, Section 1(b) of the ILA Constitution provides: "Any member, officer, or representative of the ILA or any of its subdivisions, shall be subject to discipline who is found guilty, after notice of and opportunity for hearing upon charges, as provided for in this Article, of violating any provision of this Constitution, or a decision of the Executive Council or of

CIVIL NO. 08-1505 (JP)        -8-

    his local union, district council, or district
    organization, or of dishonesty, misconduct, or conduct
    detrimental to the welfare of the ILA."

23. By letter dated September 1, 2007, Cepero filed charges
    with the ILA pursuant to Article XVIII of the
    ILA Constitution against Ferrer in his capacity as
    Financial Secretary of ILA Local 1740 alleging: (1) that
    Ferrer failed to perform his duties as Financial Secretary
    timely, to wit that he failed to promptly pay bills;
    (2) that Ferrer's failure to pay taxes and bills caused
    the local to incur penalties and fines; (3) that Ferrer
    failed to work cooperatively with Cepero; (4) that Ferrer
    opposed Cepero's efforts to hire a CPA; and (5) that
    Ferrer made disparaging comments towards Cepero to
    employers.

24. By letter dated September 6, 2007, Cepero filed amended
    union disciplinary charges against Ferrer with the ILA.

25. The ILA referred the charges filed by Cepero against
    Ferrer to the ACD for further proceedings consistent with
    Article XVIII.

26. ACD President Stephen Knott appointed ACD Vice-Presidents
    Robert Gladden, Jr. and Felipe García as a committee to
    hear the charges filed by Cepero against Ferrer.

CIVIL NO. 08-1505 (JP)          -9-

27. The hearing on the charges against Ferrer took place on September 25 and 26, 2007 at the Hilton Caribe in San Juan, Puerto Rico.

28. Ferrer was represented by legal counsel, Ada Pérez, Esq., at the hearing.

29. The ACD hearing was conducted in Spanish with translation into English for the benefit of Gladden.

30. All parties were provided the opportunity to be heard before the committee.  Both Cepero and Ferrer submitted evidence for consideration by the committee.

31. The Committee made several findings of fact against Ferrer.  Among the findings were that during Ferrer's term as Financial Secretary of Local 1740, Local 1740 incurred penalties and late fees from several State and Federal Agencies.  Another finding was that, on one occasion, the I.R.S. threatened to seize the Local's bank accounts due to delinquent payments.

32. Based upon those findings, the Committee recommended that Ferrer be removed from the position of Financial Secretary of Local 1740 and that Ferrer be barred from running for any ILA office for a period of one (1) year.

33. The Committee Report was submitted on October 10, 2007 to the entire ACD Executive Board which unanimously accepted the report.

CIVIL NO. 08-1505 (JP)          -10-

34.  On October 12, 2007, ACD Secretary-Treasurer Daggett forwarded a copy of the ACD decision and report in both Spanish and English to Cepero and Ferrer.

35.  At no point during the hearing were any objections raised with regard to the selection of the ACD Committee.

36.  At no point during the hearing were any objections raised with regard to the composition of the ACD Committee.

37.  At no point during the hearing were any objections raised with regard to the conduct of the hearing before the ACD's committee.

38.  The ILA did not participate in the proceedings before the ACD.

39.  The ILA Constitution permits an appeal from any ACD decision to the ILA.  Article XIX, Section 3 of the ILA Constitution provides: "All appeals shall be in writing, shall contain a brief statement of the facts and the grounds for the appeal and shall be filed with the secretary of the body to which they are addressed within thirty days, or such longer period as such body may permit, after the rendition of the decision from which the appeal is taken."

40.  By letter dated October 25, 2007, Ferrer appealed the ACD decision to the ILA.

CIVIL NO. 08-1505 (JP)          -11-

41. ILA President Richard P. Hughes appointed ILA Vice-Presidents Raymond Sierra and Gerardo Becerra as a committee to conduct a hearing on Brother Ferrer's appeal.

42. Ferrer was notified that his appeal would be heard by the ILA Committee at the Tampa Westshore Marriot in Tampa, Florida on November 28, 2007.

43. On November 27, 2007, Ferrer submitted his position on appeal to the ILA Committee through his attorney, Nicolás Nogueras, Jr.

44. Ferrer's appeal fails to raise any issue of fraudulent behavior on the part of the ILA.

45. Ferrer's appeal fails to raise any issue of a conspiracy involving the ILA.

46. Ferrer's appeal does not raise any issue that Ferrer was denied the opportunity to present evidence in his defense before the ACD committee.

47. The ILA Committee considered Ferrer's appeal and recommended that the decision of the ACD's Executive Board be affirmed. The decision of the ILA committee was submitted to and affirmed by the ILA's thirty-two person Executive Council.

48. Elected officers of Local 1740 serve three year terms of office.

CIVIL NO. 08-1505 (JP)          -12-

49. As Financial Secretary of Local 1740, Ferrer earned an annual salary.

50. Ferrer was removed from office with less than one year remaining on his elected term.

51. The ACD decision did not affect Ferrer's ability to work. Neither the decision of the ACD nor its subsequent affirmation by the ILA precluded Ferrer from seeking work within the longshore industry or affected his seniority within the industry.

52. Ferrer has worked for longshore employers in Puerto Rico as a member of Local 1740 on a regular basis since December 2008.

53. Ferrer did not seek professional treatment for any physical or mental medical condition allegedly related to his removal from office until consultation with Plaintiffs' expert witness, Dr. Víctor Lladó. Plaintiff then subsequently began treatment on X date with Dr. X.

The following facts are deemed uncontested by the Court because they were included in the motion for summary judgment and opposition and were agreed upon, or they were properly supported by evidence and not genuinely opposed.

1. Defendant ILA is an international labor organization which, together with its affiliated districts and locals, acts as the collective bargaining representative for

CIVIL NO. 08-1505 (JP)          -13-

substantially all longshore and related waterfront employees engaged in the loading and unloading of ocean-borne cargo in 36 ports on the East and Gulf Coasts of the United States, including Puerto Rico.

2.   Cepero is not an agent or employee of the ILA.

3.   The ILA is divided into two districts, the Atlantic Coast District ("ACD") and the South Atlantic and Gulf Coast District ("SA&GCD").

4.   The ILA, ACD, and SA&GCD are separate legal entities with separate officers, treasuries and by-laws.

5.   By letter dated September 1, 2007, Cepero filed charges with the ILA pursuant to Article XVIII of the ILA Constitution against Ferrer in his capacity as Financial Secretary of ILA Local 1740 alleging that Ferrer failed to perform his duties as Financial Secretary.

6.   The evidence submitted to the Committee included the following documents:

a)   IRS Notice No. CP215, dated August 27, 2007, for the tax period December 31, 2004, showing a penalty assessment balance of $8,412.31;

b)   IRS Form 941PR, dated August 27, 2007, for tax period March 31, 2005, showing a balance of taxes, fines and interest of $78.99;

CIVIL NO. 08-1505 (JP)           -14-

      c)   IRS Form 941PR, dated August 27, 2007, for tax period September 30, 2006, showing a balance of taxes, fines and interest of $354.26;

      d)   IRS Form 941PR, dated August 27, 2007, for tax period March 31, 2007, showing a balance of taxes, fines and interest of $2,610.82;

      e)   Commonwealth of Puerto Rico, Department of the Treasury, Notice and Request for Payment of Taxes, dated March 9, 2007, for period October 1, 2006 through December 31, 2006, showing a balance of unpaid taxes, surcharges, and penalties totaling $5,181.77;

      f)   Commonwealth of Puerto Rico, Department of the Treasury, Notice and Request for Payment of Taxes, dated July 6, 2007, for period April 1, 2006 through June 30, 2006, showing a balance of unpaid taxes, surcharges, and penalties totaling $5,429.48;

      g)   Commonwealth of Puerto Rico, Department of the Treasury, Notice and Request for Payment of Taxes, dated August 10, 2007, for period January 1, 2006 through March 31, 2006, showing a balance of unpaid taxes, surcharges, and penalties totaling $6,746.11;

      h)   Commonwealth of Puerto Rico, Department of the Treasury, Notice and Request for Payment of Taxes,

CIVIL NO. 08-1505 (JP)            -15-

> dated August 10, 2007, for period January 1, 2006
> through March 31, 2006, showing a balance of unpaid
> taxes, surcharges, and penalties totaling $269.62;
> and
>
> i)   Local 1740's Disability Insurance Statement of
> Account and letter requesting payment for the CFSE
> accident insurance policy.

7.   On October 10, 2007 the ACD Committee Report was submitted
to the other eighteen members of the ACD Executive Board
which unanimously accepted the report.

8.   Ferrer's appeal was heard by the ILA Committee at the
Tampa Westshore Marriot in Tampa, Florida on November 28,
2007.

9.   By letter, dated November 17, 2006, Cepero wrote to
Ferrer.  The ILA did not write or otherwise participate in
the preparation of this letter.

10.  By letter, dated November 21, 2006, Cepero wrote to
Ferrer.  The ILA did not write or otherwise participate in
the preparation of this letter.

11.  By letter, dated September 17, 2007, Cepero wrote to
Ferrer.  The ILA did not write or otherwise participate in
the preparation of this letter.

12.  Cepero was the Secretary of Finance from 2002 to 2005.

CIVIL NO. 08-1505 (JP)          -16-

13. Ferrer took office as the Financial Secretary in January 2005.

14. On one occasion Cepero was called to go to Juan Vélez's office to have a conference with Mr. John Baker. John Baker is the ILA Assistant General Organizer. The conference call was held before the ACD Committee hearing.

15. Felipe García and Juan Vélez were present during that conference call. Felipe García is one of the two members of the ACD Committee that heard the charges that Cepero brought against Ferrer.

16. Ferrer was not present during the conference call.

17. Juan Vélez communicated with the ILA over the phone. Juan Vélez is a Vice President in the ILA's Executive Council.

18. Cepero told Baker that Ferrer had talked about conversations.

19. Cepero also spoke about the documents that were arriving at the union regarding union bills with several government agencies, which were the basis for the charges that Cepero filed against Ferrer. Cepero, Ferrer and García, spoke about what was going on; and all the ways that could be employed to have the job done well. Cepero told Baker that Ferrer was not doing his job.

20. Baker responded that he would speak to Ferrer to have him understand the situation.

CIVIL NO. 08-1505 (JP)          -17-

21.   IRS Notice No. CP215, corresponds to a tax period that occurred during the time that Mr. Cepero was the financial secretary, ending in December 31, 2004.

22.   IRS Form 941PR at page 71, is for a period ending March 31, 2005 and is for $78.99.  It included a $4.93 fine, and a $10.29 interest assessment.

23.   IRS Form 941PR at page 77, is for a period ending in September 20, 2006 and is for $354.26.  It included a $20.06 interest assessment.

24.   IRS Form 941PR at page 79, is for a period ending in March 31, 2007 and was notified on August 27, 2007 for a total amount of $2,610.82.  It included a $21.54 fine and a $34.68 interest assessment.

25.   The aggregate amount of debt for these three assessment must be broken down as follows: assessed debt $2,952.57, assessed interest $65.03, fines $26.47.

26.   Notice number 0731896070309 was appraised on March 9, 2007.

27.   Notice number 07846344070706 was appraised on July 6, 2007.

28.   Notice number 0782082070810 was appraised on August 10, 2007.

29.   Notice number 0792083070810 was appraised on August 10, 2007.

CIVIL NO. 08-1505 (JP)          -18-

30. The FBI came into the Local and took the computers and financial statements for the Union in August or September 2005.

31. Ferrer asked Cepero for the Local's financial files but Cepero refused to hand them over.

32. Cepero kept the financial documents in his house after the Aponte trial was finished but did not return them to the union.

33. Ferrer had been outspoken about the need to hold an assembly to ratify Cepero in his position, he wrote to John Baker, Elizabeth Alexander, Juan Vélez and Felipe García and they all refused to enter into the controversy.

34. There was a membership-supported effort to force the celebration of an assembly meeting and to have Cepero expelled from the Union.

35. Ferrer planned to speak at that Assembly regarding Cepero's inadequacy as President.  However, 48 hours before the Assembly the Committee Report came in forbidding him from intervening in union matters or running for office for one year.

36. Cepero had promised that he would make supporters pay once he was ratified in his position.

CIVIL NO. 08-1505 (JP)          -19-

37.  On January 2, 2007 Cepero wrote a letter to Plaintiff
     Ferrer at the request of ILA officers, regarding certain
     financial statements.

38.  Cepero told Ferrer, two weeks before the notification of
     the Committee Report, that Cepero would kick Ferrer up his
     ass, and that Ferrer would disappear from all of the
     docks.

39.  Ferrer felt intimidated by ILA officers and members,
     because of their record of involvement with the mafia and
     organized crime.

40.  John Baker told Plaintiff that he had to leave Cepero
     alone, and lay low.  This conversation took place a few
     months prior to the Committee Report.

41.  Plaintiff also spoke to Richard Hughes, candidate for
     President of the ILA and current President, regarding
     Cepero's conduct against union interests and his knowledge
     of the money laundering scheme.

42.  Ferrer asked García what had happened with the Committee
     Report and García replied that it had come like that from
     the United States and that García had just signed it.

43.  On August 31, 2007 Cepero wrote a letter to Ferrer,
     addressing local union matters, but yet he sent a copy of
     this letter to John Baker.

CIVIL NO. 08-1505 (JP)          -20-

    44.  On September 4, 2007 Cepero wrote a letter to Ferrer, addressing local union matters, but yet he sent a copy of this letter to John Baker.

    45.  On September 17, 2007 Cepero asked Ferrer to give him accounting program codes and documentation, and stated "God forbid something happen to you and nobody has it."

## II.  **LEGAL STANDARD FOR A MOTION FOR SUMMARY JUDGMENT**

Summary judgment serves to assess the proof to determine if there is a genuine need for trial. Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when "the record, including the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, viewed in the light most favorable to the nonmoving party, reveals no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Zambrana-Marrero v. Suárez-Cruz, 172 F.3d 122, 125 (1st Cir. 1999) (stating that summary judgment is appropriate when, after evaluating the record in the light most favorable to the non-moving party, the evidence "fails to yield a trial worthy issue as to some material fact"); Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993); Canal Ins. Co. v. Benner, 980 F.2d 23, 25 (1st Cir. 1992). The Supreme Court has stated that "only disputes over facts that might affect the outcome of the suit under the

CIVIL NO. 08-1505 (JP)          -21-

governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In this way, a fact is material if, based on the substantive law at issue, it might affect the outcome of the case. See Mack v. Great Atl. and Pac. Tea Co., Inc., 871 F.2d 179, 181 (1st Cir. 1989).

On a summary judgment motion, the movant bears the burden of "informing the district court of the basis for its motion and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant meets this burden, the burden shifts to the opposing party who may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through the filing of supporting affidavits or otherwise, that there is a genuine issue of material fact for trial. See Anderson, 477 U.S. at 248; Celotex, 477 U.S. at 324; Goldman, 985 F.2d at 1116.

III. **ANALYSIS**

Defendants argue that summary judgment is appropriate because Plaintiffs have not provided sufficient evidence to create any genuine issues of material fact. Specifically, Defendants argue that Plaintiffs cannot establish their RICO and LMRDA claims. Also, Defendants argue that they are entitled to summary judgment on

CIVIL NO. 08-1505 (JP)          -22-

Plaintiffs' Puerto Rico law claims because said claims are preempted. The Court will now consider Defendants' arguments in turn.

### A.   RICO

Plaintiffs allege RICO violations pursuant to 18 U.S.C. § 1962. Under Section 1962(a), it is unlawful for any person who has received income from a pattern of racketeering activity to use such income for the operation of an enterprise affecting interstate or foreign commerce.  Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate  or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" Plaintiffs also allege that Defendants conspired to violate RICO in violation of Section 1962(d), which states "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

Defendants argue that summary judgment on Plaintiffs' RICO claims is appropriate because Plaintiffs have failed to provide sufficient evidence for a jury to find: (1) the existence of an enterprise; (2) the necessary predicate acts; and (3) a pattern of racketeering activity.  The Court will only discuss the issue of a "pattern of racketeering activity" since it is the dispositive issue.

CIVIL NO. 08-1505 (JP)          -23-

### 1.   Pattern of Racketeering Activity

To prevail on a RICO claim, a plaintiff must prove defendants engaged in a pattern of racketeering activity.  18 U.S.C. § 1962; see Financial Advisors & Consultants v. Cooperativa de Seguros de Vida, 106 F. Supp. 2d 244, 256 (D.P.R. 2000) (Pieras, J.).  The statute defines "pattern" as at least two acts of racketeering, and specifies what acts may serve as predicates for such claims.  See 18 U.S.C. §§ 1961(1) and (5).  Plaintiff must show that two or more predicate acts "are related and pose at least a threat of *continued* criminal activity."  Financial Advisors & Consultants, 106 F. Supp. 2d at 257 (emphasis added).

The continuity requirement can be satisfied by one of two methods: (1) close-ended continuity; or (2) open-ended continuity.  Id. at 257-60.  As decided in this Court's Opinion and Order on Defendant ILA's motion to dismiss, Plaintiffs have not alleged open-ended continuity and therefore the Court focuses its analysis on close-ended continuity.  Under close-ended continuity, a party may demonstrate continuity over a close period of time by proving a series of related predicate acts[1] extending over a substantial period of time.  Id. at 258-59.

Plaintiffs allege that the pattern of racketeering began in November 2006 when Defendant Cepero communicated with members of the

---

1.   For purposes of this argument, the Court will assume, without deciding, that Plaintiffs have sufficient evidence to show that Defendants committed the predicate acts.

CIVIL NO. 08-1505 (JP)          -24-

ILA and Local 1740 regarding false charges of misconduct against Ferrer. Plaintiffs also allege that Cepero then entered into an agreement with the other Defendants to file charges against Ferrer, and for Ferrer to be subsequently terminated from his union position, thereby establishing a close-ended pattern of racketeering activity that followed from said agreement. Ferrer was terminated from his position some time shortly after October 12, 2007. Based on this, there was a period of eleven months during which Defendants allegedly engaged in a pattern of racketeering activity. Although there is no bright-line rule on the amount of time necessary to show close-ended continuity, the Court concludes that an eleven month period is not sufficient to establish close ended continuity. See Efrón v. Embassy Suites (P.R.), Inc., 223 F.3d 12 (1st Cir. 2000) (finding that a period of racketeering activity of less than two years does not satisfy the close-ended continuity requirement); see also H.J. Inc. v. Northwestern Bell Tel. Co., 492 U.S. 229, 242 (1989) ("[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy [the continuity] requirement").[2] Because Plaintiffs' allegations do not satisfy the continuity requirement, Plaintiffs cannot demonstrate a pattern of racketeering

---

[2]    The Court notes that Plaintiffs were given an opportunity to provide proof of a longer period of racketeering activity at the motion to dismiss stage. However, in their opposition to the motion for summary judgment, Plaintiffs did not even mention the time period in their section titled "Pattern of Racketeering[.]"

CIVIL NO. 08-1505 (JP)          -25-

activity.  In the absence of such a pattern, the Court will grant summary judgment for Defendants on the Plaintiffs' RICO claims.

**B.   LMRDA**

Section 101 of the LMRDA is a union members' bill of rights. Specifically, it protects union members' rights to voting, speech, and assembly.  29 U.S.C. § 411.  LMRDA protects the membership rights of union members, but not the right of members to hold office.  Ríos v. Oil, Chemical & Atomic Workers International Union, 331 F. Supp. 511, 513 (D.P.R. 1970).  This is so because, in passing the statute, Congress intended to protect "rank-and-file union members - not union officers or employees, as such."  Finnegan v. Leu, 456 U.S. 431, 437 (1982).

The Supreme Court has held that "removal from appointive union employment is not within the scope of those union sanctions explicitly prohibited" by the relevant statutory provisions. Id. at 439.  Furthermore, the "discharge from union employment does not impinge upon incidents of union membership, and affects union members only to the extent that they happen to be union employees." Id. at 438.

In the instant action, Defendants argue that Plaintiffs have no cause of action because LMRDA does not protect Ferrer against removal from office.  Plaintiffs respond that removal from office was protected by LMRDA because the disciplinary action was initiated by Cepero with the motive of stifling Ferrer's right to free speech.

CIVIL NO. 08-1505 (JP)          -26-

Furthermore, Plaintiffs argue that Ferrer's rights under LMRDA were also violated when Ferrer was suspended from running for an elected position for a year and when Defendants impeded his intervention in the administrative and financial affairs of the union.

### 1.    Removal from Office

The removal of Ferrer from his appointed position does not create a cause of action under LMRDA.  <u>Finnegan</u>, 456 U.S. at 437-39. Even assuming that Ferrer's accuser was motivated by animosity in bringing the charges, Ferrer has no cause of action because he was found guilty of violating a union rule, Article XVIII, Section 1(b) of the ILA Constitution, which is not related to free speech.  <u>See</u> <u>Ritz v. O'Donnell</u>, 413 F. Supp. 1365, 1376-77 (D.D.C. 1976) (finding that even if some animosity was the motivation for bringing the charges, no cognizable LMRDA claim exists when union member was found guilty of violating union rule unrelated to free speech).  Plaintiff Ferrer was disciplined for his failure to adequately perform his duties as Financial Secretary.  Thus, the Court finds that Ferrer's removal from office does not create a cause of action under LMRDA.

### 2.    Suspension from Running for Office and Impeding Ferrer's Participation in Administrative and Financial Affairs

Also, Plaintiffs argue that Ferrer's rights as a member of the union were violated when Ferrer was suspended from running for an elected position for a year and when they impeded his intervention in the administrative and financial affairs of the union.

CIVIL NO. 08-1505 (JP)            -27-

The LMRDA provides that:

Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

29 U.S.C. § 411(a)(1) and (2) ("Section 411").

In the instant case, the Court finds that Plaintiffs' allegation that Ferrer was prevented from running for office for one year does not create a cause of action under Section 411. <u>U.S. v. International Brotherhood of Teamsters</u>, 988 F. Supp. 759, 766 (S.D.N.Y. 1997) (finding that LMRDA does not guarantee the right to hold office or the privilege of being a candidate for elective union office).[3] Nowhere in Section 411 is a member of a union given

---

3.    Plaintiffs rely on <u>Local Union No. 82, Furniture and Piano Moving, Furniture Store Drivers, Helpers, Warehousemen and Packers v. Crowley</u>, 467 U.S. 526 (1984), to support their conclusion that the right to participate in union elections is a right protected by the LMRDA. Their reliance is misplaced. The <u>Crowley</u> decision extended the protection of the LMRDA to "union members *while*

CIVIL NO. 08-1505 (JP)          -28-

the right to run for office.  Thus, Plaintiffs cannot state a claim for violation of Section 411 of LMRDA on the basis of Plaintiff Ferrer's suspension from running for office.

Plaintiffs also argue that they stated a cognizable claim under LMRDA because Defendants impeded Ferrer's intervention in the administrative and financial affairs of the union.  The report stated that Ferrer should restrain himself from any obstructions or interference with the administrative business of Local 1740.

In their opposition to Defendants' motion for summary judgment, Plaintiffs merely conclude that "there should be little discussion about a member's right to question administrative affairs or practices engaged into by the union" without explaining why the order violated Section 411 or how the order actually prevented Ferrer from questioning the administrative affairs and practices of the union. While the Court should draw all reasonable inferences in favor of the nonmoving party, mere conclusory allegations without factual support are insufficient to survive summary judgment.  Prescott v. Higgins, 538 F.3d 32, 39 (1st Cir. 2008); Daury v. Smith, 842 F.2d 9, 11 (1st Cir. 1988) (quoting Pérez de la Cruz v. Crowley Towing & Transportation Co., 807 F.2d 1084, 1086 (1st Cir. 1986)).  Therefore,

_they participate_ in union elections."  Id. at 536 (emphasis added). Since Ferrer was not participating in union elections, the Crowley decision is inapplicable.  Furthermore, in no way did the Supreme Court decide the issue here of whether a member of a union cannot be precluded from running for office in the future when the union member was found to have violated the constitution of the union.

CIVIL NO. 08-1505 (JP)          -29-

the Court finds that none of Plaintiff Ferrer's membership rights under Section 411 have been violated.

Accordingly, the Court grants summary judgment as to Plaintiffs' LMRDA claims.[4]

### C.   Puerto Rico Law Claims

Plaintiffs also bring claims arising under Puerto Rico law, specifically Article 1802 of Puerto Rico's Civil Code, P.R. Laws Ann. tit. 31, § 5141; and Article II of the Constitution of the Commonwealth of Puerto Rico.

Dismissal of pending state law claims is proper because an independent jurisdictional basis is lacking. Exercising jurisdiction over pendent state law claims once the federal law claims are no longer present in the lawsuit is discretionary. See Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991) (holding that "[t]he power of a federal court to hear and to determine state-law claims in nondiversity cases depends upon the presence of at least one 'substantial' federal claim in the lawsuit . . . [and] the district court has considerable authority whether or not to exercise this

---

4.    Plaintiffs also argue that Defendants violated 29 U.S.C. § 411(a)(5) because Ferrer was not afforded a full and fair hearing when he did not have an opportunity to present witnesses and to review the charges. Having determined that no membership rights have been violated, the Court concludes that LMRDA Section 411(a)(5) does not provide Ferrer with a remedy for the alleged violations.  Rios v. Oil, Chemical & Atomic Workers International Union, 331 F. Supp. 511, 514 (D.P.R. 1970) (finding that plaintiffs lack a cause of action under Section 411 (a)(5) when the Court determines that no membership rights have been violated).

CIVIL NO. 08-1505 (JP)          -30-

power, in light of such considerations as judicial economy, convenience, fairness to litigants, and comity[]").

In the instant case, the Court chooses not to hear the state law claims brought by Plaintiffs.  Therefore, the Court will dismiss the state law claims without prejudice.

**IV.   <u>CONCLUSION</u>**

In conclusion, the Court **GRANTS** Defendants' motion for summary judgment.  The Court will enter a separate judgment dismissing the complaint.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 4th day of November, 2009.


                                    s/Jaime Pieras, Jr.
                                 JAIME PIERAS, JR.
                              U.S. SENIOR DISTRICT JUDGE